(No. 5113—

ALLENE WILLIAMS AND BUEL WILLIAMS, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1965.*

HANAGAN AND DOUSMAN, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimants Allene Williams and Buel Williams seek recovery of $25,000.00 each for damages incurred as a result of an automobile collision with an employee of the State of Illinois Youth Commission on December 17, 1962.

The record shows that on the date in question Mrs. Allene Williams was traveling north along Illinois State Route No. 37, a through highway, at about 3:30 P.M. She was approaching its intersection with State Route No. 183, which is controlled by stop signs for both westbound and eastbound traffic. No stop signs control the northbound or

southbound traffic on Route No. 37 at this intersection. Charles Weiser, an employee of the State of Illinois Youth Commission, Division of Community Services, who was returning from an interview with a ward of the Franklin County Court assigned to him, was driving his 1959 Chevrolet westbound on Route No. 183. According to witnesses, Weiser failed to stop at the sign controlling traffic on Route No. 183 at the intersection, and either failed to slacken the speed of his automobile, or, in fact, accelerated and collided with the vehicle being operated by claimant Allene Williams. Charles Weiser was killed as a result of this collision, and Allene Williams suffered severe injuries, including permanent total loss of the use of both legs and virtually complete loss of the use of both arms.

Several fellow employees of Allene Williams, who were either passengers in her car or were in cars immediately behind, testified that Mrs. Williams was traveling at about 50 to 55 miles per hour when the Weiser car ran the stop sign, and collided with the Williams car. There was no evidence of contributory negligence on the part of Mrs. Williams.

A letter from the Chairman of the Youth Commission establishes that Weiser was in the course of his employment with the State of Illinois at the time of the accident.

In exchange for a covenant not to sue the Estate of Charles Weiser, with reservation of the right to sue the State of Illinois, claimant Allene Williams received the sum of $14,000.00, and claimant Buel Williams received the sum of $1,000.00. The total amount of $15,000.00 constituted the entire amount of Weiser's insurance policy coverage for injuries to one person.

Dr. Alan Anderson who treated Mrs. Williams since March 1, 1963 testified that, based upon a reasonable degree of medical certainty, Mrs. Williams will require nursing or

attendant's care for the rest of her life to provide for her needs, such as feeding. She will endure permanent pain from being bedridden. The doctor further testified that the bills submitted for her medical care were the usual and customary charges for such services.

Claimant Buel Williams who was not present at the accident testified that he was the husband of Allene Williams for about 22 years at the time of the hearing, and that before the accident his wife's general physical condition was good, and she was able to perform duties as a housewife, and also work at a dress factory earning about $3,000.00 per year. He further testified that, when he is not working, he performs services for his wife, which are normally performed by a practical nurse or attendant.

Judicial notice was taken of the life expectancy tables of *American Jurisprudence*, 2d, that a woman born on February 20, 1918, as of January 24, 1964 has a life expectancy of 32.1 years, and that a man born on June 13, 1914, as of January 22, 1963 has a life expectancy of 23.8 years.

Evidence was further submitted of bills incurred on behalf of Allene Williams, which her husband is obligated to pay, and for which he has already made partial payment in the amount of $7,631.84.

Claimants allege the following "actual" damages:

DAMAGES OF ALLENE WILLIAMS

Loss of earnings:

Past loss: 12/17/62—1/22/64
Weekly average: $61.21 per week

| | |
|---|---|
| Weeks lost: 55 .............................. | $ 3,366.55 |
| 55 weeks pain and suffering: .................. | $ 5,500.00 |
| (Using Illinois Workmen's Compensation Computor as guide, on all loss of use of extremities) | |
| Total loss of use of both legs .................. | $ 20,800.00 |
| 90% loss of left arm .......................... | $ 10,998.00 |
| 80% loss of right arm ........................ | $ 9,776.00 |

Future loss of earnings—
$3,000.00 per year for 20 years ............... $ 60,000.00
TOTAL DAMAGES (not including future pain
and suffering): ............................. $110,440.55

#### DAMAGES OF BUEL WILLIAMS

Medical expenses to date for care of wife ........ $ 7,631.84
Nursing and attendance care from 1/22/64 for *shorter* life expectancy of husband, based upon average monthly expense for *nursing and attendance care alone.*

$117.78 per month X 12 months ............ $ 1,413.36
$1,413.36 X 23.8 years ................... $ 33,637.97
Loss of wife's services for 23.8 years ........... $ 23,800.00
TOTAL DAMAGES (Not including medical expenses for wife's longer life expectancy): .... $ 65,069.81

There are three issues to be determined: (1) Whether the amount of $15,000.00, ($14,000.00 and $1,000.00) received for claimants' execution of covenants not to sue the Estate of Charles Weiser must be deducted from the statutory ad damnum limit of $25,000.00 or whether the total damages should be the base for determination of the final award, although they exceed the statutory limit; (2) whether the husband of an injured claimant may recover for monies spent for her benefit; (3) whether the spouse of an injured claimant has a separate cause of action for loss of consortium under the Court of Claims Act in which he could conceivably recover up to $25,000.00 over and above the amount granted to the injured claimant.

The relevant statutory provision provides as follows:

"The Court shall have jurisdiction to hear and determine the following matters: . . .

"D. All claims against the State for damages in cases sounding in tort, in respect of which claims the claimant would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable . . . ; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $25,000.00 to *or for the benefit of any claimant.*" (Emphasis supplied) (Ill. Rev. Stats., Chap. 37, Sec. 439.8.)

Respondent contends that any award made by this Court must be subject to the limitation of $25,000.00 to or

for the benefit of any claimant and from the amount of any award made must be deducted the damages recovered by claimants for which they have given covenants not to sue. Respondent cites *Aldridge* vs. *Morris*, 337 Ill. App. 369, which holds that, where the plaintiff receives payment for a covenant not to sue from one against whom tort liability could lie, such payment may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit; and *Flisk* vs. *State of Illinois*, 21 C.C.R. 363, where the Court stated:

"The maximum tort liability of respondent in this case is $2,500.00. It is admitted claimant has received the sum of $6,300.00 from persons deemed jointly responsible for his injuries. This amount, under the authority of the State of Illinois, would have to be deducted from any sum allowed by this Court, and hence no damages could be awarded."

This Court in *Laboda and Anzalone* vs. *State of Illinois*, 24 C.C.R. 172, states the following:

"In determining the matter of damages, the Court is confronted with a problem apparently never decided before. The statutory limit for cases sounding in tort in the Court of Claims in 1957 was $7,500.00. The statutory limit for cases under the wrongful death statute in 1957 was $20,000.00.

"Dolores Laboda received the sum of $20,000.00 under a covenant not to sue, and Sam Anzalone, Administrator of the Estate of Sam Anzalone, Jr., received the sum of $5,969.00 under a covenant not to sue.

"The law is clear that there can be but one satisfaction for a wrong, and, where there are joint tort feasors, and one is released under a covenant not to sue, the person who is sued is entitled to a credit of such amount on the judgment rendered against him. (*Puck* vs. *City of Chicago*, 281 Ill. App. 6.)"

The Court then considered the New York rule, which states that when the plaintiff has accepted satisfaction in full for the injury done him from whatever source it may come, he is so far affected that the law will not permit him to recover again for the same damages. But, it is not easy to see how he is so affected until he has received full satisfaction, or that which the law must consider as full.

The Court continued:

"The doctrine would be of persuasive authority in a court of record in this State where the matter of damages was not limited by statute, but the Court of Claims is a creature of statute, and the amount allowable in matters sounding in tort is limited by the Act.

In a recent case, *Price* vs. *Wabash R. R. Company*, 30 Ill. App. 2d 115, the court held that, where a plaintiff received a payment for a covenant not to sue, such payment may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit.

The Court, therefore, concludes that it must deduct any payments made under a covenant not to sue from the statutory limits of the Court of Claims Act."

Claimants, on the other hand, cite the recent case of *Valentine* vs. *Peiffer*, 203 N.E. 2d 179, at 182 and 183, as follows:

"It is not every award, which fixes the total damages sustained by a party. *It should be obvious to all that in those cases where the legislature has placed an arbitrary limit upon a statutory recovery, a maximum verdict does not necessarily fix total damages.* For instance, in the case of *Trans World Airlines, Inc.* vs. *Shirley*, 9 Cir., 295 F. 2d 678, an award of $200,000.00 for death was returned. In Illinois, a maximum recovery would have been $30,000.00, even though the evidence would have been identical. Thus it is apparent that *every verdict does not represent an adjudication of total damages, especially where there is a statutory limitation on recovery.*" (Emphasis supplied.)

Although the court in the *Valentine* case did not deduct the amounts received for prior settlements with common law defendants in a case under the Dram Shop Act, and did allow plaintiff to collect the maximum amount from the Dram Shop defendants, the rationale upon which the court relied was that the defendants did not raise the issue of total damages until post-trial proceedings and that this was an affirmative defense, which the defendants had the burden of proving before a verdict was reached by the jury.

Claimants also cite the case of *Slone* vs. *Morton*, 188 N.E. 2d 493, in support of their claim that any set-off should be against total damages and not the statutory limit of

$25,000.00. In that case maximum recovery was allowed under the Dram Shop Act, notwithstanding that payments had also been made under the Wrongful Death Act. The court held that the Dram Shop Act and the Wrongful Death Act create different statutory rights and duties and that the nature and amount of damages provided for in the Dram Shop Act are not to be limited by the provisions of the Wrongful Death Act.

In the instant case there is no question of timeliness in raising the issue of set-off as in the *Valentine* case, nor are two separate and distinct statutory rights to be pursued as in the *Slone* case. Both cases are clearly distinguishable from the case at hand, as are the statutes involved in the Wrongful Death and Dram Shop cases different from that applicable to the instant case.

It is, therefore, the opinion of this Court that any amount received by claimants in exchange for a covenant not to sue must be deducted from the statutory limit specified in the Court of Claims Act of $25,000.00.

A husband has a separate right of action to recover damages for loss of services and consortium of his wife occasioned by personal injury to her according to the cases of *Stephens* vs. *Weigel*, 336 Ill. App. 36, 82 N.E. 2d 697, and *Blair* vs. *Bloomington & Normal Railway, Electric and Heating Co.*, 130 Ill. App. 400. However, this separate right is limited by the Court of Claims Act, which allows only one recovery of up to $25,000.00 to or for the benefit of any claimant. In *Bovey* vs. *State of Illinois*, 22 C.C.R. 95 at 125, the husband of the injured claimant was not allowed to recover for his wife's medical expenses, since they directly benefited the wife who had already received the maximum recovery allowable under the Court of Claims Act. The Court also denied any portion of housework expenses incurred for the benefit of the injured claimant and allowed

only those damages proven by the husband which could not be considered as benefiting the injured wife.

Therefore, no part of Mrs. Williams' medical expenses may be included in Mr. Williams' claim. However, the Court recognizes that Mr. Williams has suffered extensive loss of his wife's services resulting from the negligence of respondent's agent.

Claimant Allene Williams is, therefore, awarded the sum of $25,000.00, less the $14,000.00 received for the covenant not to sue, or a total of $11,000.00.

Claimant Buel Williams is awarded the sum of $8,-500.00, less the $1,000.00 already received for the covenant not to sue, or a total of $7,500.00.