(No. 6832—

CONNIE J. PARKINSON, EXECUTRIX OF THE ESTATE OF HARRY C. PARKINSON, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 29, 1976.*

K ATZ , M C A NDREWS , D URKEE & T ELLEN , Attorneys for Claimant.

W ILLIAM J. S COTT , Attorney General; D OUGLAS G. O LSON , Assistant Attorney General, for Respondent.

P ERLIN , C. J.

Claimant is the executrix of the estate of her late husband, Harry C. Parkinson. In that capacity she seeks damages for the wrongful death of her decedent, who was killed in an automobile accident on October 21, 1971. The accident occurred on Illinois Highway 67, which was under the jurisdiction and control of Respondent at the time of the occurrence. Claimant contends that the death of Harry C. Parkinson was proximately caused by the failure of Respondent to properly maintain the road and the adjoining shoulder at the accident site.

Illinois Highway 67 is a two-lane, undivided blacktop road which runs in a generally northerly and southerly direction. The accident took place just over the crest of a hill, about one and one-quarter miles south of Preemption, Illinois. The road had been paved in such a fashion that immediately over the crest of this hill the highway narrowed abruptly from a width of 24 feet to a width of 21 feet, eight inches. This appeared to repre-

sent a pattern in the paving of the highway for some distance in either direction. That is, at the crest of each hill the pavement narrowed, and then widened as it went up the succeeding hill. Further, where the pavement narrowed at the accident site the shoulder of the road had eroded, so that there was a trench approximately eight inches deep running along the west edge of the narrowed pavement.

The eroded condition of the shoulder was shown to have existed for over one year prior to the date of the accident and had been reported to the State of Illinois on at least two occasions after cars had gone off the highway and into the trench. There were no signs posted to warn southbound motorists of the narrowing of the pavement or of the drop-off at the shoulder of the road.

The deceased was southbound on Route 67 at about 4:30 p.m. The road was clear and dry, and visibility was unobstructed. The speed limit at the accident site was 65 miles per hour. The Court must assume that the deceased was familiar with the condition of the road, as he had resided in the general vicinity for a number of years.

As the Parkinson car cleared the crest of the grade about one and one-quarter miles south of Preemption, the right wheels of his car went off the narrowed road and into the trench formed by the eroded shoulder. Based upon the expert testimony and photographic evidence introduced at trial, it appears that his vehicle traveled approximately 57 feet in the trench, came back onto the road and traveled about 225 feet in the southbound lane, and then crossed into the northbound lane and traveled about 135 feet before striking head on a car driven by one Barbara Zeigler. Both Parkinson and Ms. Zeigler were killed instantly in the collision.

James L. Esters, an Illinois State Trooper who con-

ducted an investigation at the accident scene, testified that he had observed that the western edge of the pavement was chipped for some distance where Parkinson's car left the road. Esters said that he believed that this was caused by the right wheels of Parkinson's car striking the edge of the road as Parkinson tried to bring the car back on the pavement.

The deceased was 32 years old at the time of his death and left surviving a wife and three small children. He was a farmer and had earned $22,000 in 1970.

Parkinson's widow, his father-in-law, and his sister, all of whom had driven with the deceased on numerous occasions prior to the accident, testified that he was a cautious, safe driver who typically exercised reasonable caution while driving.

James Baker, a traffic engineer, testified on behalf of Respondent. Baker said that based upon his examination of photographs of skid marks left by Parkinson's car, and the known weight, direction and speed of the vehicles involved in the collision, he believed that Parkinson's car was travelling about 60 miles per hour when it struck the Zeigler car. He also estimated that Parkinson had been travelling approximately 73 miles per hour when he first applied his brakes after getting his car back on the pavement.

The State owes a duty to those using its streets and highways to keep those roads in a reasonably safe condition. *Schuck v. State, 25 Ill.Ct.Cl. 209.* This duty extends to properly maintaining the shoulders of a highway for the uses for which they are reasonably intended. *Lee v. State, 25 Ill.Ct.Cl. 29; Welch v. State, 25 Ill.Ct.Cl. 270.* To recover in this action Claimant bears the burden of proving by a preponderance of the evidence that Respondent has breached its duty of reasonable care; that the breach of duty was the proximate cause of the death

of her decedent; and that her decedent was in exercise of reasonable care for his own safety at the time of the accident.

The record does tend to establish that the State of Illinois did not utilize reasonable care in maintaining Highway 67 at the accident site. Not only did the pavement narrow at the crest of a hill, but an eight inch deep trench was permitted to form at the edge of the pavement where the shoulder had eroded. We have previously ruled that the State is not bound to maintain a shoulder in the same condition as the paved surface of a highway, and that a difference of a few inches between the height of the pavement and the shoulder is not negligence per se. See *e.g. Sommer, et al. v. State, 21 Ill.Ct.Cl. 259; Howell v. State, 23 Ill.Ct.Cl. 141.* Here however the combination of the narrowed pavement and the extreme difference in the height of the pavement as compared to that of the shoulder constituted a dangerous condition. See *Mallory v. State, 24 Ill.Ct.Cl. 236.*

Claimant has further proven that the State had actual notice of this condition for over one year prior to the accident, and that the State neither corrected the situation nor placed warning signs in the area. In failing to correct a dangerous condition on its highway, of which it had actual notice for a substantial period, the State appears to have breached its duty of reasonable care in maintaining the road.

We further find that the State's breach of duty was a proximate cause of the death of Harry Parkinson.

The more difficult issue is whether Claimant has proven that Harry Parkinson was in the exercise of reasonable care for his own safety at the time of the accident. Testimony was introduced by Claimant as to the careful driving habits of her decedent which is probative of the issue of whether he used due care in the instant situation.

However, Respondent urges strongly that Harry Parkinson was contributorily negligent, and after a careful review of the record, the Court must agree.

We first note that Highway 67 in the area of the accident scene narrows repeatedly at the crests of hills, and it is not unreasonable to assume that Parkinson, who lived in the locality for a number of years, was aware of this fact.

Moreover James Baker, a highway engineer who testified on behalf of Respondent, stated that after Parkinson brought his car back on the pavement, it traveled approximately 225 feet in the southbound lane, crossed over into the northbound lane, and traveled an additional 135 feet in that lane before striking the Zeigler car at 60 miles per hour. There does not appear to be any reasonable explanation for Parkinson's failure to stop, or at least slow his car, after he had gotten it out of the trench.

We have carefully examined photographs of Parkinson's car taken after the collision which show that both his right front and right rear tires were inflated. Thus, they were not blown when his car went off the road and could not have caused Parkinson's car to go out of control once it was back on the pavement. Clearly Parkinson had time to stop or significantly slow his car once it was back on the road, yet he continued for approximately 360 feet before striking the Ziegler car. In failing to stop or slow his car, we think he failed to act as would a reasonably prudent person under the circumstances. In this connection we also note the testimony of James Baker that photographs of the skid marks left by Parkinson's car indicated that he was travelling in excess of the speed limit when he first applied his brakes.

The contributory negligence rule is often harsh in application, but it is a rule which this Court is bound to

recognize. The Court regrets this unfortunate occurence but is of the opinion that this claim must be denied.