(No. 80-CC-0994

RICHARD H. PETERSON, Administrator of the Estate of Claude E. Tuggle, Deceased, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 27, 1984.*

PHELPS, CARMODY & KASTEN, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This is an action for wrongful death against the State of Illinois. The complaint alleges that Claude Tuggle, the decedent, was killed because the State of Illinois either negligently failed to maintain the shoulder along Illinois Route 4 or negligently failed to warn the decedent of the dangerous shoulder. The Claimant is the administrator of the estate of the decedent.

On May 1, 1979, decedent was driving north on Illinois Route 4 toward Carlinville, Illinois. At a point approximately four miles south of Carlinville, there is a curve sweeping to the driver's left. On the right side of the road there was a pickup truck parked along the shoulder. According to the only two eyewitnesses to the accident, Beulah Gansz and Robert Maurer, as decedent approached a construction area, his car went off onto the shoulder on the right but appeared to be totally under control. As he approached the truck parked in his

path, decedent tried to bring his car back onto the highway but in doing so lost control of his car. The right front wheel came back onto the highway, and the car seemed to hop onto the highway and then spin in a counterclockwise direction for approximately 100 feet before it hit an approaching car driven by Robert Maurer in the southbound lane. Tuggle died as a result of this collision.

Duane Dunlap, a consulting highway engineer, testified that the facts surrounding this accident are consistent with a phenomenon known as tire nibbling. Tire nibbling occurs when there is a drop-off along the shoulder of a highway and the tires on a car are forced to "climb" the drop-off in order to get back onto the highway. As a tire climbs the drop-off, the tire is exerting a force against the drop-off and the drop-off is exerting a holding force against the tire. As the front tire reaches the top of the drop-off, it is still exerting an inward force while the rear tire is still having a holding force exerted against it. The result is that the car will spin in a counterclockwise direction.

The State of Illinois elicited testimony from its own witnesses that the drop-off in this area was between one and two inches deep at the accident site. However, several witnesses testifying for Claimant testified that the drop-off was between three to six inches along the accident site.

While the State of Illinois has not filed a brief in defense of this claim, the Court is nonetheless aware that in *Lee v. State* (1964), 25 Ill. Ct. Cl. 29, this Court determined "while the State must use reasonable care in maintaining the shoulder of the highway, there is no basis to hold that a difference of three to four inches in the levels of the road and shoulder constitute a

dangerous condition *per se.*" The Court is satisfied, however, that Claimant in this case has provided a basis for distinguishing *Lee* from the case at hand.

In *Lee*, the accident occurred in 1962. No evidence was ever presented to establish the proper design and maintenance standards for highways as they existed in 1962. In the case at hand, however, Claimant's witness Dunlap, a consulting engineer well versed in the area of highway safety and design, testified that the maintenance of the shoulders along Illinois Route 4 deviated from acceptable highway safety standards as those standard existed at the time of the accident.

According to Dunlap, the American Association of State Highway and Transportation Officials (AASHTO), of which the State of Illinois and the Department of Transportation are members, formulates highway safety standards on a national basis. Over the years AASHTO has issued several sets of policies or standards in the manual entitled *Highway Design and Operational Practices Related to Highway Safety* (1974). With regard to the maintenance of highway shoulders, the proper standard is that all parts of the shoulder that touch the edge of the pavement should be kept flush with the pavement. Respondent has presented no evidence or argument to suggest that these standards are not applicable to the State of Illinois in the situation at hand. As such the standard presented by the Claimant is admissable as evidence that may be considered by the trier of fact to be the proper standard of care. (*American State Bank v. County of Woodford* (1978), 55 Ill. App. 3d 123, 371 N.E.2d 232.) Deviation from this standard may then be further considered as supporting a failure to exercise due care on the part of Respondent.

Dunlap testified that proper highway standards

dictate there should be no drop-off on the side of the highway and that tire nibbling can occur with as little as one-half inch of drop-off, but that the probability of the phenomenon increases in proportion to the depth of the drop-off. Given the fact that the events surrounding the accident are consistent with the phenomenon known as tire nibbling, and given the testimony that indicated that there was a three- to six-inch drop-off along the shoulder, we believe that more likely than not the accident was at least in part proximately caused by the fact that decedent tried to bring his car back onto the road at a point which had a drop-off contrary to recognized safety standards. It is further undisputed that there were no signs warning the decedent of the dangerous condition.

On the other hand, while Respondent's negligence is established, it is further established that decedent was not exercising reasonable care for his own safety and was thus guilty of contributory negligence. There was no reason that decedent could not have been aware of the road construction and of the oncoming traffic. There is no evidence that his view of the entire area surrounding the scene of the accident was in any way impaired. He had ample opportunity to slow or stop his vehicle rather than drive off the roadway onto the shoulder if either the construction or the oncoming traffic presented a potential problem in regard to passing the scene of the accident in his own lane. *Parkinson v. State* (1976), 31 Ill. Ct. Cl. 98.

All negligence cases tried in the circuit courts of Illinois on or after June 8, 1981, are to apply the rule of comparative negligence in the place of the old rule whereby contributory negligence completely bars recovery. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d

886.) The policy reasons for replacing the old contributory negligence rule are adequately explained in *Alvis.* The harshness of the rule has been lamented by this Court. *Parkinson v. State, supra,* 103, 104.

Section 4 of article 13 of the Illinois Constitution of 1970 abolished sovereign immunity in Illinois, except as the State legislature "may provide by law." The Immunity Act was then enacted by the legislature to provide that the State "shall not be made a defendant or party in any court" except as provided in the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 127, par. 801). Section 8(d) of the Court of Claims Act authorizes exclusive jurisdiction in the Court of Claims to hear "all claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation, in a civil suit. . . ." (Ill. Rev. Stat. 1979, ch. 37, par. 439.8(d).) The "like cause of action" provides a legislative directive that this Court allow an injured party to recover in tort against the State the same as such person could recover in tort against a party in the Illinois courts of general jurisdiction. The only legislative restriction is that an award for damages in tort in a case such as this shall not exceed $100,000.00. If this court were to bar a claim in tort because of contributory negligence when the same injured party could recover in a civil action in circuit court because of the application of comparative negligence, then the statutory directive will not have been followed. We therefore find that the doctrine of comparative negligence as adopted by the Supreme Court of Illinois in *Alvis v. Ribar* is to be applied in cases sounding in tort in the Court of Claims.

*Alvis* adopted what is known as the doctrine of comparative negligence in its pure form. By this is meant that the Claimant's total damages are simply reduced by

the percentage of fault attributable to him. Because such reduction is used, it is necessary to determine the effect of the statutory $100,000.00 limit on the determination of damages. Claimant argues that his potential damages exceed $100,000.00 and that the award should first be made as to total damages without regard to the statutory limitation, that this total award should then be reduced by the percentage of decedent's negligence (if any), and that the damages then resulting from the comparative negligence formula are the only damages subject to the $100,000.00 limitation. The Court has considered similar issues in the past and has held consistently that any reductions or setoffs must apply to and be deducted from the statutory limit and not the total potential award where the total award exceeds the limit. (*Williams v. State* (1965), 25 Ill. Ct. Cl. 249.) The reason for this is there can be but one satisfaction for any injury, and therefore other recoveries must be deducted from the amount the State would otherwise be actually required to pay.

In the case of comparative negligence, however, we are not dealing with a situation where Claimant has already received some other satisfaction. Rather, the damages are being reduced by virtue of Claimant's negligence. Hence, the total amount of possible recovery against the State cannot even be determined until the deduction resulting from Claimant's negligence is first determined. The Court therefore finds that *Williams* is not applicable as to the issue of reduction and that the full potential award should first be determined before any reduction is made for Claimant's negligence.

Decedent was 28 years old when he died. He left a widow and two children, a daughter, age seven, and a

son, age three. He had been a minister since 1977 for the Assembly of God churches. The family lived in Kewanee, Illinois, where he was an assistant pastor. At the time of his death, decedent was en route to the State headquarters of the Assembly of God churches near Carlinville.

Decedent's widow testified that decedent was a good provider and spent very little on himself. His health was good; he did not drink intoxicants. His income at the time of death was $562.50 per month plus additional allowances and benefits of over $400 per month.

Fred Gottheil, a professor of economics at the University of Illinois, testified that decedent's work life expectancy on the date of death was 34.1 years and that his full life expectancy was 43.7 years. Professor Gottheil found the present cash value of decedent's lost earnings to be $235,749.33.

Decedent's funeral bill was $2,409.50.

The measure of damages in a wrongful death claim is the benefits of pecuniary value, including money, goods and services decedent might have reasonably been expected to contribute to his widow and children. The factors to be considered are: what decedent customarily contributed in the past; what he earned and what he was likely to have earned in the future; what he spent for customary personal expenses; what instruction, moral training and superintendence of education he might reasonably have expected to give his children had he lived; his age; his health; his habits of industry, sobriety and thrift; and his occupation. (Illinois Pattern Instruction 31.04.) Based upon all these factors, the Court finds that the total damages are $500,000.00.

As to the amount of negligence on the part of the decedent, the Court finds it to be 60%. The net damages not attributable to decedent's negligence are therefore $200,000.00. The Court finds that the damages which should therefore be awarded to Claimant on the claim for wrongful death are $100,000.00, the statutory limit.

Claimant also has brought a separate claim for the funeral bill of $2,409.50. (*Eggimann v. Wise* (1964), 56 Ill. App. 2d 385, 206 N.E.2d 472.) However, the statute provides that the award "shall not exceed the sum of $100,000.00 to or for the benefit of any claimant." (Ill. Rev. Stat. 1979, ch. 37, par. 439.8(d).) Since the administrator is the only Claimant both for the injuries under the wrongful death claim and for the funeral expenses, the limitation clearly applies to the claims in the aggregate, not separately. (*Bovey v. State* (1955), 22 Ill. Ct. Cl. 95.) Therefore, the Claimant is not entitled under the Act to anything over the single award of $100,000.00.

Based on the foregoing it is hereby ordered that the Claimant, Richard H. Peterson, administrator of the estate of Claude E. Tuggle, be, and hereby is, awarded the sum of $100,000.00.