(Nos. 78-CC-1457, 78-CC-1458 cons.—

JAMES C. SIEFERT, Administrator of the Estate of Donna Jean Siefert, deceased, and BEVERLY BEAVERS, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 26, 1989.*

*Orders on motions for attorney fees filed November 14, 1989.*

ZIMMERLY, GADAU, SELIN & OTTO, for Claimants.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Patchett, J.

These two cases are consolidated for purposes of

this opinion. The claims arose out of an accident which occurred September 27, 1976. As a result of the accident, which was a head-on collision between an automobile driven by Donna Jean Siefert and an automobile in which Beverly Beavers was a passenger, Donna Jean Siefert lost her life. Beverly Beavers was seriously injured in the accident.

There is not a great deal of dispute regarding the facts of this accident. The accident occurred on Lynch Road, a road maintained by the State of Illinois in Vermilion County, just outside of Danville, Illinois. Lynch Road is a north-south rural road adjacent to the Wyman-Gordon plant in Vermilion County. The road, at the site of the accident, ran in a north-south direction, is concrete, and approximately 12 feet wide for approximately 300 feet north of the entrance to the plant. At that point Lynch Road has a curve to the west, after which Lynch Road runs generally east and west.

The automobile driven by Mrs. Siefert was traveling in a northerly direction on Lynch Road at about 3:15 in the afternoon. Mrs. Siefert's vehicle left the highway approximately 15 feet north of the entrance to the plant. At that point, the shoulder of the road on the east side of the road was extremely rough and contained many ruts and holes. After traveling approximately 220 feet, partially on the shoulder and partially on the highway, the car veered out of the ruts across the highway and struck another vehicle in which Mrs. Beavers was a passenger.

There was some dispute about the nature and extent of the ruts and holes on the shoulder; however, it was undisputed that the shoulder was in a general state of poor repair. Much of the testimony at the hearing held in this case before the Commissioner of this Court

concerned the nature and extent of the deterioration of the shoulder of Lynch Road. We need not dwell on it more here except to state that it is a factual finding of this Court that the shoulder in question was unreasonably dangerous and not maintained in a reasonably safe manner. Even the Respondent's witness, David Trowbridge, who is a maintenance field technician for the State of Illinois, referred to the scene of the accident as a "real bad area."

It also clearly appears that the State had notice that this defective shoulder existed. A Vermilion County deputy sheriff testified that he had received a letter from the Paris office of the Illinois Department of Transportation advising that if they found any further road conditions of that type, they should notify the Paris office. Although the Respondent objects that the letter was not produced at trial and it was probably hearsay evidence, no objection was made at the hearing as to its admission. In addition, the Court feels that the State had constructive notice of the defect because of the length of time it existed. This was established by uncontradicted evidence at the trial of this matter.

The first issue is, therefore, whether the State had a duty to maintain the shoulder in a reasonably safe manner. Assuming, as we have already found, that the State had notice of the defect, and that the shoulder was actually defective or not reasonably maintained, is the State liable as a matter of law?

Most of the cases involving highway shoulders which have been decided by this Court up until now have held for the Respondent. Only in the case of *Welch v. State* (1966), 25 Ill. Ct. Cl. 270, was there a finding for the Claimant. That case involved an extremely hazardous condition existing on the shoulder of the road. It also

involved a truck which evidently was intentionally attempting to pull onto the shoulder of the road to avoid an accident. This is clearly the purpose for which shoulders are designed. That decision also used the definition of highway as found in the Illinois Highway Code (Ill. Rev. Stat., ch. 121, par. 2—202) and required the State to use "reasonable care" in maintaining the shoulder of the highway. Throughout the series of cases previously decided by the Court of Claims on this issue, the issue of contributory negligence was often a factor. Obviously, in this era of comparative fault, contributory negligence is no longer a complete bar to recovery. However, this Court must and will consider the comparative fault of the Claimants, if liability is found to exist. The Court may ignore some of the results of previous decisions which were decided on the ground of contributory negligence of the Claimant being a complete bar to recovery.

In a case decided just before the *Welch* opinion, *Lee v. State* (1964), 25 Ill. Ct. Cl. 29, the claim was denied. In that case, the alleged defect was minimal, consisting of a three- to four-inch difference in the level of the pavement and the level of the shoulder. In addition, the Court used the definition of highways found in Ill. Rev. Stat., ch. 95½, par. 109. The Court cited the case of *Somer v. State* (1952), 21 Ill. Ct. Cl. 259, in which the Court held that the Respondent did not have a duty to maintain the shoulders of its highways in a manner that would insure the safety of vehicles turning off onto the shoulder, and then attempting to return to the roadway while traveling at the same speed. Furthermore, the Court found that the contributory negligence of *Somer* was a bar to recovery. The Court does not feel that the decision in *Lee* is inconsistent with either the decision in *Welch*, or the decision in this case. Here the uncontra-

dicted evidence established that the shoulder of the highway was in extremely bad repair, and the alleged defect consisted of more than a difference in the level of the road and the shoulder. In addition, this Court does not feel that it is important which statutory definition of highway is used. It is clear that the Respondent is required to maintain the highway and the shoulder in a manner reasonably safe for its intended purposes. Obviously, the standard of care is higher for the highway than the shoulder, since the reasonably intended use of the highway requires a greater level of care than the shoulder.

In the case of *Alsup v. State* (1976), 31 Ill. Ct. Cl. 315, the claim was again denied. However, in that case there was an eyewitness who testified that the driver did not attempt to slow down after leaving the roadway, and that the defect complained of was a four- to six-inch drop off between the level of the highway and that of the asphalt shoulder. In addition, there was some factual dispute in that case as to the actual difference in the level of the highway and the shoulder. We feel that this case can be distinguished on the basis of eyewitness testimony which established that the Claimant in that case did not attempt to slow down prior to returning to the roadway. In addition, the defects alleged in *Alsup* were much more minimal than those in the case at hand.

In the case of *Hill v. State* (1978), 32 Ill. Ct. Cl. 482, the claim was denied because the Claimant became involved in the area between the paved shoulder and the unpaved shoulder, which included a six-inch drop off. Again, the simple difference in the levels of the roadway and the shoulder has not been held to be negligent maintenance by the State. Moreover, the Claimant in

that case had come to a complete stop, and attempted several times to drive from the unpaved shoulder area back onto the highway. Considering the weather conditions at the time, which included heavy snow and ice, the Court felt that the Claimant was guilty of contributory negligence. At the time, that was a complete bar to recovery. In addition, it seems that the defect in the roadway complained of was simply minimal in nature.

In the case of *Howard v. State* (1979), 32 Ill. Ct. Cl. 435, Judge Holderman gave a rather complete history and analysis of claims involving alleged defective shoulders. The Court did an extensive analysis as to whether or not the injury involved in these cases was reasonably foreseeable. We hold that this type of accident, with resulting injuries, is reasonably foreseeable as a result of negligent maintenance of highway shoulders. We do not modify or overrule many previous decisions which hold that the State is not an insurer of each motorist's safety on the highways. While the *Howard* case held that the other driver's negligence was the sole proximate cause of the injuries in that case, it discussed whether the State's maintenance had caused a dangerous condition. We hold that if the facts in a case show that the State has caused a dangerous condition by neglecting to maintain the shoulders of the highway, after having had actual or constructive notice of the defect requiring such maintenance, it is reasonably foreseeable that an injury may result therefrom. If that dangerous condition of the shoulder is a proximate cause of an injury, that is sufficient to establish liability. Damages would then of course be reduced by the Claimant's contributory negligence or comparative fault.

In the case of *Berry v. State* (1968), 26 Ill. Ct. Cl. 377, the Court denied the claim because the Claimant was driving his tractor along the shoulder of the highway rather than on the highway itself. The case was clearly decided on the contributory negligence of the Claimant, which at that time was a complete bar to recovery. However, in denying the claim, the Court cited with approval the case of *McNaughton v. State*, 9 App. Div. 2d 990, 194 N.Y. State 2d 873, in which the New York Court held that the State was to maintain the shoulder of the road in a reasonably safe condition. The Court pointed out that the shoulder was not intended for travel or use when there is nothing to interfere with travel on the paved highway. There are no facts present here which suggest that Mrs. Siefert was deliberately driving on the shoulder. We hold that it is reasonable to assume that vehicles will leave the paved surface of the highway from time to time. The Respondent must maintain the shoulder of the road in a reasonably safe condition, so that the shoulder condition itself will not cause foreseeable injury to those automobiles or their passengers which leave the highway.

In the case at hand, the condition of the shoulder was significantly bad. It appears that the State had notice of the condition. Further, there was no evidence of excessive speed on the part of the Claimant, or any evidence to show that the Claimant was attempting to return to the highway just before the accident occurred. There was an expert witness who was entitled to express an opinion under the supreme court's ruling in *Wilson v. Clark* (1981), 84 Ill.2d 186, 417 N.E.2d 1322, and who testified that the shoulder area did cause her to come back onto the highway.

For the foregoing reasons, we find that liability

exists on the part of the Respondent, and the Claimants are entitled to recovery.

Not much evidence was presented at the oral argument as to damages. We will undertake the claim of Mrs. Siefert first. We believe that Mrs. Siefert, mother of two and employed at the time of her death, is entitled to a substantial amount of damages. However, we also believe that Mrs. Siefert, from the facts presented at the hearing on this case, was guilty of contributory negligence. In the case of *Peterson v. State* (1984), 37 Ill. Ct. Cl. 104, this Court considered the effect of comparative fault on an award in the Court of Claims. In that case, the total damages suffered by the Claimant were $500,000. The deceased was found to be 60% negligent, thereby establishing the damages at $200,000. That left him the right to a maximum award of $100,000.

In other words, the Court has decided that comparative negligence factors would be applied to the total amount of damages. After that figure has been established, the statutory maximum, if applicable, will apply. Of course, the other change in law since the time that the *Peterson* case was decided is that there now would be no recovery in the case where the Claimant was more than 50% negligent. However, we have established in the present case a comparative negligence figure of 50%.

There was some testimony in the present case of Donna Siefert's life expectancy, her dependents, and her salary. There was no testimony from an economist to clearly establish the present cash value of decedent's lost earnings. However, considering the factors that were present such as her age, health, habits of work and her dependents, we find the total damage in this case to be $400,000. Since we found her to be 50% negligent, we

would reduce that award to $200,000. We must then apply the statutory maximum of $100,000. For the foregoing reasons, we award James Siefert, administrator of the estate of Donna Siefert, the sum of $100,000.

Mrs. Beavers was not guilty of any contributory negligence. However, the facts presented as to her damages indicate that her award should be substantially less than that of Mrs. Siefert. Considering her hospital bills, doctor bills, and the medical testimony of her physician, we feel that she should be awarded a total award of twenty five thousand dollars ($25,000.00). Since she received $12,500 under an earlier settlement with the insurance company of Mrs. Siefert, we will reduce our award by that figure and award her a net amount of twelve thousand five hundred dollars ($12,500.00).

We have consistently held, unlike the deduction of comparative fault, that any reduction to an award due to set-off or recovery from another source will be deducted from the statutory maximum award prior to making an award. That is the reason for the reduction in the total damages of Mrs. Beavers, which were $25,000, by the sum of $12,500. We therefore award Beverly Beavers the sum of $12,500.

ORDER ON MOTION FOR ATTORNEY FEES

PATCHETT, J.

Now on this 14 day of November 1989, the same being one of the regular judicial days of the Illinois Court of Claims, this cause coming on to be heard on the verified motion for attorney fees (in *Siefert*) of John Gadau, for this Court's approval of a fee of 40%, said motion supported by affidavit in consent to attorney

fees in addition to statutory amount by the Claimant, James C. Siefert, administrator of the estate of Donna Jean Siefert, deceased, and by Kendra Sue Siefert, having reached her majority, and waiver of notice of hearing of James C. Siefert and Kendra Sue Siefert, and the Court being advised in the premises.

It is therefore ordered that the motion for attorney fees (in *Siefert*) of John Gadau in the sum of 40% be and is hereby approved and that attorney fees are awarded in the sum of $40,000.00.

It is further ordered that John Gadau, or a law firm in which John Gadau was at the time of advancement a partner, be reimbursed for reasonable and necessary expenses to the prosecution of this cause against the State of Illinois in the sum of six hundred twenty nine dollars and thirty seven cents ($629.37).

## ORDER ON MOTION FOR ATTORNEY FEES

PATCHETT, J.

Now on this 14 day of November 1989, the same being one of the regular judicial days of the Illinois Court of Claims, this cause coming on to be heard on the verified motion for attorney fees (in *Beavers*) of John Gadau, for this Court's approval of a fee of 40%, said motion supported by affidavit in consent to attorney fees in addition to statutory amount by the Claimant, Beverly Beavers Hegg, and said Claimant's waiver of notice on hearing, and the Court being advised in the premises.

It is therefore ordered that the motion for attorney fees (in *Beavers*) of John Gadau in the sum of 40% be and

is hereby approved and that attorney fees are awarded in the sum of $5,000.00.