(No. 5550—

Iris A. Alsup, Et Al., Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed December 3, 1976.*

WEBBER, BALBACH, THIES and FOLLMER, Attorneys for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER and DOUGLAS G. OLSON, Assistant Attorneys General, for Respondent.

BURKS, J.

Claimants seek recovery for Claimants' intestates Fred Glover, his wife, Lula Mae Glover, and their children, Danny Lee Glover and Dennis James Glover. Also, recovery is sought for injuries sustained by Florence Ann Elam and Jerry Lynn Glover.

The evidence shows that at twilight on August 10, 1966, Fred Glover and his family were driving south on Interstate 55 near the Williams Road Overpass in Will County, Illinois. Fred Glover, his wife, Lula Mae Glover, and their children, Danny Lee, Dennis James, Florence and Jerry, were on a vacation trip to Arkansas and had left the family home in Romeoville, Illinois earlier in the day.

As the Glover vehicle approached the Williams Road Overpass on Interstate 55, the vehicle went out of control and collided with a bridge abutment. Serious injuries were sustained by Florence Ann Glover and her brother, Jerry Lynn Glover; the remaining members of the Glover family were killed. Claimants charge that the State was negligent in designing and constructing the shoulder surfaces adjoining the highway, designing

the bridge abutment without a guardrail, failing to keep the highway in a reasonably safe condition, failing to warn of a hidden curve, and failing to design and maintain the highway and shoulders in a manner adequate for anticipated usage.

The evidence shows that the Glover vehicle was being operated on the left-hand side of the southbound lanes as it approached the Williams Road Overpass. After having passed several vehicles, it remained on the left side of the southbound lanes and drifted onto the asphalt shoulder which lies adjacent to and east of the east edge of the southbound lanes. As the Glover automobile started to pull back onto the traveled portion of the southbound lanes, the vehicle appeared to grab the edge of the paved portion of the road at the left rear wheel and go out of control. The vehicle veered from the right to the left two or three times and skidded into a bridge abutment at the Williams Road Overpass.

The two surviving Glover children had no recollection of the facts of the accident, apparently as a result of traumatically induced amnesia.

David Swank, a truck driver from Williamsville, Missouri, who was driving south on Interstate 55 at the scene of the accident, was an eyewitness. Swank observed the Glover vehicle as it passed a truck behind his and proceeded to pass his truck in the left-hand, southbound lane. Swank estimated Glover's speed to be 55-65 miles per hour. The Glover vehicle remained in the left-hand southbound lane after having passed Swank's vehicle and slowly drifted to the left onto the asphalt shoulder, so that the left two wheels of the Glover vehicle were off of the main traveled portion of the southbound lanes. Swank testified that as the Glover vehicle started to pull back to the right and onto the traveled portion of the southbound lanes, the left rear

wheel of the Glover car grabbed the edge of the paved portion of the highway causing the car to lurch to the right and begin veering from right to left. Swank testified that after the left tires of the Glover vehicle drifted onto the shoulder, the car did not decrease its speed prior to attempting to return to the main traveled portion of the southbound lanes. Swank was shown to be an experienced truck driver.

The bulk of Claimants' evidence concerned the question of the presence of a four to six inch drop-off between the asphalt shoulder and the concrete portion of the highway. It was maintained by Claimants that this drop-off caused the Glover vehicle to go out of control and proximately resulted in the deaths and injuries for which damages are claimed.

The day after the accident several members of the Claimants' family went to the scene of the accident. Herbert Blalock testified that the shoulders of the highway at the accident scene were washed out and that there was a drop-off. Blalock testified that the drop-off was from four to six inches.

Charles Inboden testified there was a deep drop-off.

State Troopers Hershel Goken and Robert Smith were at the scene of the accident and testified that they observed no unusual conditions along the shoulders of the highway.

John Watson, a wrecker truck driver who was present at the scene, testified that he was familiar with the condition of the highway at the scene of the accident and related that the shoulders were in good condition. Watson testified that there was a separation of the blacktop and the concrete highway at the shoulder of approximately one inch to one and one-half inches.

John Picciolo, a maintenance worker for the State of Illinois whose responsibilities covered the area of I-55 near the Williams Road Overpass, testified that he inspected that section of I-55 every day and sometimes twice a day. His duties included repairing the road and the shoulders. Picciolo testified that at the area of the accident, the drop-off from the surface of the highway to the shoulder could have been three to four inches.

Fred Mason, a traffic engineer for the State of Illinois during August, 1966, viewed the accident scene three days after the event. Mason's report revealed that the median shoulder at the scene of the accident was one inch or two inches low along the pavement edge.

Steve Kakavas, a maintenance field engineer for the State of Illinois, inspected the highway prior to the accident in question at least once a week. He recalled that the inside shoulder of southbound I-55 at the Williams Road Overpass was always in good condition. He testified that the median shoulders had very little traffic on them.

Claimants rely principally on their allegation that the State had failed to properly maintain the shoulder of the road at the scene of the accident. There was no sufficient proof adduced tending to substantiate Claimants' charges relative to the State's design of the shoulder or highway or the design of the bridge abutment.

In order to recover, the following elements must be proven:

(1) That the State of Illinois was negligent,

(2) That such negligence was the proximate cause of the deaths and injuries alleged in the Complaint, and,

(3) That the occupants of the car were not contributorily negligent.

It is Claimants' main contention that the accident was caused by the condition of the road, in that the shoulder was several inches lower than the road.

From the testimony of the eyewitness in this case, it appears that Fred Glover was contributorily negligent, and that his own action proximately caused the accident resulting in his death. At the time the Glover vehicle drifted onto the median shoulder, Glover was apparently still in control of his car. Then, as the Glover vehicle returned to the traveled portion of the road, it went out of control, resulting in the accident. The speed of the Glover vehicle was not reduced prior to returning all four wheels to the main traveled portion of the highway.

Section Fifty-four of the Uniform Act Regulating Traffic on Highways (Ill.Rev.Stat., Ch. 951/2, §151) provided that "upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." Exceptions to this rule do not apply in the incident case. "Roadway," as defined by the Illinois Vehicle Code, does not include the shoulders thereof. In the case of *Sommer v. State of Illinois,* 21 Ill.Ct.Cl. 259, this Court stated:

> We do not feel respondent has a duty to maintain the shoulders of its highways in a manner that would insure the safety of vehicles turning off onto the shoulder for whatever their purpose might be, and then attempting to return to the roadway, while traveling at the same speed.

In the case of *Lee v. State of Illinois,* 25 Ill.Ct.Cl. 29, 34, this Court stated:

> While the State must use reasonable care in maintaining the shoulder of a highway, there is no basis to hold that a difference of three or four inches in the levels of the road and shoulder constitutes a dangerous condition *per se.*

In the opinion of this Court, Claimant has failed to sustain the burden of proof that Fred Glover was free from contributory negligence.

The further question arises as to the claims on behalf of and as a result of the injuries and deaths sustained by other occupants of the Glover vehicle.

The record in this cause does not support the contention of Claimants that a defective condition existed on the highway and shoulder which was the proximate cause of the accident resulting in Claimants' injuries. As set forth above, there was ample evidence to compel the conclusion that the State used reasonable care in the inspection and maintenance of Interstate 55 at and near the scene of this accident. Steve Kakavas, the highway maintenance field engineer, testified that the median shoulders of Interstate Route 55 were to provide an area where, if a car ran off the road, it "could decelerate prior to getting back on the pavement."

Charles Schmidt, a state highway engineer who investigated the area of the accident, testified that the median shoulder was not built for operating at normal highway speed.

The eyewitness truck driver, David Swank, testified without contradiction that the Glover automobile was still traveling about 55-65 miles per hour when it attempted to return to the paved portion of Interstate 55.

In the opinion of this Court, Claimants have failed to sustain their burden of proof that the State did not use reasonable care in the maintenance of the shoulders of the highway at the scene of this accident. The claims of Iris A. Alsup as Administratrix, and the claims of Florence Elam and Jerry Glover, are hereby denied.