(No. 88-CC-0566—)

JOHN DOYLE, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed June 29, 1993.*

MARSHALL R. DUSENBURY, for Claimant.

ROLAND W. BURRIS, Attorney General (CAROL J.
BARLOW, Assistant Attorney General, of counsel), for
Respondent.

OPINION

PATCHETT, J.

This is a claim which arose out of a traffic accident
which occurred on February 5, 1987. At 3:30 p.m., the
Claimant was driving home from work southbound on
Illinois Route 45 north of Bourbonnais, Kankakee
County, Illinois. He was driving a 1974 Chevrolet van
which he had allegedly purchased two to three weeks
prior to the date of the accident. The van was not yet
titled in his name.

At a point approximately one-half mile north of
Indian Oaks Road, his van left the highway. When asked
if the road was slippery, he stated that he "fell off the

edge." He testified that he slowed down to get back on the road and got caught in a big rut on the side of the road. He jerked his van around and slid to the side. It then started rolling. His opinion was that the cause of the accident was a defective shoulder.

The van was totaled. The market value of the vehicle at the time of the accident was $750 to $800. He paid $248 to Conway Towing to have the van towed from the scene. The van was later junked.

Illinois State Trooper S. Learner investigated the accident. His narrative report was introduced into evidence, but the trooper was not called by either party.

Plaintiff introduced 13 photographs into evidence. These were taken by the Claimant's sister, in his presence, two days after the accident. The photographs were admitted without objection. The Claimant testified that he recognized the place of the accident because of the scrapes on the road where the van stopped. He then testified, "I looked back down the street, and I could see where I came off the road."

The Claimant further testified that the rutted area was 300 or 400 feet and its depth was five inches. He testified that he took a soda can, which was approximately 5½ to 6 inches tall, to the scene and placed it next to the groove on the road while taking photographs.

After the accident, he was taken to a Kankakee hospital where he received emergency treatment. X rays were taken and his finger and right knee were cleaned. He was given a sling and sent home. He later saw an orthopaedic surgeon who suggested surgery on his left shoulder because it would pop out every time he put pressure on it. He had the surgery a week later. He could

not move his left shoulder during the time period between the accident and the surgery.

The pre-operative and post-operative diagnosis were the same (third-degree acromioclavicular Spartan left shoulder). A pin was removed on March 3, 1987, and on March 10, 1987, he was instructed in the use of exercises. He was discharged on March 17, 1987. The medical record for that date stated that,

"John has no pain today, no tenderness, a full range of motion and he is certainly a lot stronger than I am. We will see him back on a prn basis."

Despite this, at trial the Claimant demonstrated some minor loss of upper extension. He further stated that he had pain occasionally, but his mobility was not reduced. He testified that he did have pain every evening, but he had not seen a doctor about the nightly pain.

At the time of the accident, the Claimant was working for Popko Insulation in Chicago Heights. He was off work for three months and earned approximately $350 net per week prior to the accident. At the time of the trial, the Claimant drove a semi-trailer truck for a living. He performed all activities as well at the time of the trial as before the accident.

Upon cross-examination, the Claimant admitted that he did not see any skid marks where he dropped off the road. He further stated that when his van went off the shoulder, he slowed down to 55 miles per hour and tried to get it back on the highway. It then rolled over three times. When he returned to the scene of the accident, he saw scrapes on the road from the top of the van, although no photographs of them were taken.

Raymond Mulholland of the Illinois Department of Transportation was called by the Claimant's attorney as an

adverse witness. Mr. Mulholland was a field maintenance engineer for the Illinois Department of Transportation who was responsible for the maintenance of the stretch of highway where the accident occurred. He testified that in order to maintain the shoulders of the highway, they would be dragged in the fall and spring. Dragging is done by a grading blade on the back of a tractor. One of the blades is placed on one end of the pavement, and the other blade off the shoulder. He testified that he would learn of drop-offs that needed to be repaired by his inspection or information from lead workers, foremen, maintenance workers, police, or motorists.

Upon being shown two of the photographs taken by the Claimant's sister which showed the top of the soda can slightly below or even with the surface of the road, he testified that if he had observed a condition within his jurisdiction as depicted by those photographs, he would have taken action to correct the situation. He further stated that the conditions exhibited in the photograph were in fact dangerous conditions. He further testified that his records disclose that stone was added to the shoulder on March 3, 1987. When called by the Respondent as a witness, Mr. Mulholland testified that he inspected the roads weekly. After looking at the photographs he stated that a drop-off the size indicated in the photographs should have been seen. He indicated that he would have made a note of it and programmed it to be repaired. He stated that it was possible that in five weeks he might have not seen the problem, but he should have seen it. He did not testify that in fact he had seen it.

Mr. Mulholland first learned of the accident by receipt of a police report. He received the report within one to two weeks of the accident. He went out to investigate. The police report showed that the shoulder was soft,

but no other defects were noted. Three photographs of the alleged accident scene which had been taken by the Department were admitted into evidence. One of these photographs showed a matchbook on the side of the road demonstrating a one- to two-inch offset from the edge of the pavement. Mr. Mulholland testified that picture No. 3 introduced by the Respondent (the matchbook photo), had probably not been taken at the same location as the two photographs previously referred to as taken by the Claimant's sister. The engineer said that the transverse crack across the pavement exists in both of the Claimant's exhibits, and that three photographs introduced into evidence by the Illinois Department of Transportation showed no such transverse crack. He said that the difference of location could have been from a few feet to 20 or 30 feet apart.

Mr. Douglas Harms, who was employed by the Department as a highway maintainer, also testified. In response to questioning by the Claimant's attorney, he testified that most of his work was plowing snow and cleaning and removing debris. He testified that there was no snow on the ground on the day of the accident. He further testified that if he had seen a dangerous condition as depicted by the Claimant's photographs, he would have notified his immediate supervisor, who would have then notified the engineer. When called as a witness by the Respondent, he testified that they frequently drove on the shoulder checking for missing reflective marker tapes on metal posts. They also look for defects on the shoulder of the road. If he had seen the situation as depicted in the photographs, he would have reported it. He did not recall if any of the stone which was placed on the road a month after the accident was placed near or at the scene of the accident.

Joseph Butler, an Illinois Department of Transportation highway maintainer, testified that if he had seen a drop-off as exhibited in the Claimant's photographs, he would have returned to the yard and reported it. He also stated that he had seen worse drop-offs. He testified that he did not remember reporting any such defects. If he had made a report, it would have been by radio. He did not know if he had plowed any snow on Route 45, but testified that when plowing snow, he couldn't see defects because they were covered up.

Obadiah Gathing testified similarly to Mulholland and Butler. Records indicated that he was in the area of the accident on December 17 and December 19, 1986. He did not remember seeing any defects at those times.

More interesting perhaps than the testimony of those witnesses who did testify were those who did not. Neither party called the State trooper who investigated the accident. Neither party called John Burnett of Kankakee who was listed as an eyewitness in the trooper's report.

Obviously, the State has a duty to maintain the shoulder in a reasonably safe manner. However, there was absolutely no evidence produced at this trial that the State had either direct notice or constructive notice of the defect in question. This Court has repeatedly addressed shoulder drop-off cases, and rarely found liability. In *Welch v. State* (1966), 25 Ill. Ct. Cl. 270, this Court did find for the claimant. The situation there involved an extremely hazardous condition existing on the shoulder of the road. In a prior case, *Lee v. State* (1964), 25 Ill. Ct. Cl. 29, we denied a claim for an alleged defect consisting of a three- to four-inch difference in the level of the pavement and the level of the shoulder. We again denied a

similar claim in *Alsup v. State* (1976), 31 Ill. Ct. Cl. 315, for a drop-off of four to six inches. In *Hill v. State* (1978), 32 Ill. Ct. Cl. 482, we denied a claim for an alleged defect which included a six-inch drop-off.

This Court did find liability in *Siefert v. State* (1989), 42 Ill. Ct. Cl. 8. In *Siefert*, this Court held:

"Most of the cases involving highway shoulders which have been decided by this Court up until now have held for the Respondent. Only in the case of *Welch v. State* (1966), 25 Ill. Ct. Cl. 270, was there a finding for the Claimant. That case involved an extremely hazardous condition existing on the shoulder of the road ° ° °. In a case decided just before the *Welch* opinion, *Lee v. State* (1964), 25 Ill. Ct. Cl. 29, the claim was denied. In that case, the alleged defect was minimal, consisting of a three-to-four inch difference in the level of the pavement and the level of the shoulder ° ° °. In the case of *Alsup v. State* (1976), 31 Ill. Ct. Cl. 315, the claim was again denied ° ° ° [and] the defect complained of was a four-to-six inch drop off between the level of the highway and that of the asphalt shoulder ° ° °.

In the case of *Hill v. State* (1978), 32 Ill. Ct. Cl. 482, the claim was denied ° ° ° which included a six-inch drop off." (*Siefert*, at 11-13.)

Further, in Siefert, the Court said:

"We hold that this type of accident, with resulting injuries, is reasonably foreseeable as a result of negligent maintenance of highway shoulders. We do not modify or overrule many previous decisions which hold that the State is not an insurer of each motorist's safety on the highways ° ° °. We hold that if the facts in a case show that the State has caused a dangerous condition by neglecting to maintain the shoulders of the highway, after having had actual or constructive notice of the defect requiring such maintenance, it is reasonably foreseeable that an injury may result therefrom. If that dangerous condition of the shoulder is a proximate cause of an injury, that is sufficient to establish liability." *Siefert*, at 14.

In this case, there was simply no proof offered that the State had any kind of notice of a defect. Lacking proof of notice, the State, not being the insurer, is simply not liable. In addition, there was insufficient evidence that a defect of sufficient magnitude existed. We deny this claim.