16

(No. 84-CC-2691—

CLAIRE M. JACOBS and WILLIAM E. JACOBS, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 28, 1996.*
*Order on petition for rehearing filed April 21, 1997.*

THOMAS F. TOBIN, III, for Claimant.

JIM RYAN, Attorney General (DAVID S. RODRIGUEZ, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimant, Claire M. Jacobs, seeks damages of one hundred thousand dollars ($100,000) from Respondent for injuries Claimant alleges she received due to Respondent's

negligent maintenance of the southbound lane and shoulder of Barrington Road near the Barrington Tennis Club. Claimant, William E. Jacobs, presents a loss of consortium claim. The cause was tried before Commissioner Griffin.

## Facts

Claimant, Claire M. Jacobs, testified that on April 5, 1982, at approximately 11:00 a.m., she was driving southbound on Barrington Road. It had just started to snow. She was traveling at 30 to 35 miles per hour. Claimant had just gone around a curve and was directly in front of what is now the Barrington Tennis Club when she hit something. She believes it was a pot hole. Her car veered to the right and she tried to steer to the left. The vehicle continued right, bounced around, and ended up in a field. She ended up some feet off the road. As the car left the roadway, Claimant was jerked around in the vehicle. When Claimant left her vehicle, she noticed that both tires on the right side of her vehicle were flat. Claimant walked back to the roadway and saw a big rut where her vehicle left the roadway. The hole was six to eight inches deep. Claimant identified photographs of the rut which were taken by her husband in June of 1982. The rut was not on the main part of the traveled highway. Claimant had her car towed and the tires and one rim repaired or replaced. She then made a police report so that the condition of the roadway would be reported and repaired. Claimant had never been in an accident before and had never had a blown tire before.

Claimant complained to the police about back pain but refused to have paramedics called. She advised the police she would see her own doctor and she went to her doctor's office. Claimant saw Dr. Lloyd McCarthy, an internist. She was examined by Dr. McCarthy who stated, "You hurt today. You're going to hurt worse tomorrow but you're okay." Dr. McCarthy was more concerned with a

gash on Claimant's knee than her back. Claimant was given medication for her knee and Roboxin and told to rest. Claimant testified that her back continued to get worse. She went to see Dr. Goldstein, an osteopath, for treatment. When the pain continued in her back, she went to see Dr. Lee, an orthopedic surgeon. Dr. Lee put her in traction and gave her a water treatment. She was in Sherman Hospital for three weeks. Claimant subsequently had a myelogram and evidently had two herniated disks. She then went to St. Mary's Hospital in Montreal, Canada. She saw Dr. Sutton who gave her chemonucleosis treatment. When Claimant returned from Canada, she had back spasms but the shooting pains down her legs were gone. She stayed in bed and her husband cared for her.

Claimant went back to work in September 1982, but just taught her classes. She received a handicapped sticker to park which she still has. She did not restart her private clinical practice until March of 1983. She had to rebuild her practice as a psychologist. She had to work with older children as she could no longer get down on the floor with the younger children she used to work with. At the time of the trial, Claimant continued to have back pain. She testified she has at least mild pain on a daily basis. She still had severe pain at least three days per week in 1995. She can no longer do many normal daily tasks and activities. Claimant has not shown dogs at shows since the accident as she cannot run her dogs around the ring.

Claimant had the following bills related to the accident:

| | |
|---|---:|
| Village Standard for towing & tires | $ 46 |
| Travel Inc. | 316 |
| Northwest Community Hospital | 15 |
| Dr. Lloyd McCarthy | 359 |
| Northwest Community Hospital | 34.50 |

| | |
|---|---:|
| Sherman Hospital | 5,292.80 |
| Dr. B.U. Chung | 466 |
| Elgin Orthopaedics | 435 |
| St. Mary's Hospital | 3,312 |
| Dr. John Sutton | 1,400 |

Dr. John Sutton testified for Claimant by way of evidence deposition. Dr. Sutton is a board certified orthopaedic surgeon. Claimant, Claire M. Jacobs, became his patient in June of 1982. Claimant was suffering from left sciatica, which is pain radiating down the left leg. She had a herniated L4-5 disk. Dr. Lee had referred Claimant to Dr. Sutton. Dr. Lee had documented the herniated disk clinically and by tests. Claimant's history was that she had been in a motor vehicle accident and after the accident she incurred back pain which, over several days, began to radiate down her left leg. Dr. Sutton examined the Claimant and it was his impression that she suffered from an acute L4-5 disk protrusion. The disk was herniated outside its normal confines compressing the left C5 nerve root. Dr. Sutton treated Claimant with chemonucleosis. By using a drug, the pressure on a compressed nerve root is relieved. Dr. Sutton opined that Mrs. Jacobs' herniated disk is a permanent injury. Dr. Sutton also gave the opinion that he believes the car accident of April 1992, could have caused and in this case probably did cause her herniated disk.

Claimant, William Jacobs, is the husband of Claimant, Claire M. Jacobs. They were married in October 1948. Mr. Jacobs learned of his wife's accident on April 5, 1982. In June of 1982, he went out to the scene and took a picture of the roadway. He pointed out an eight-inch difference between the roadway and the shoulder. Mr. Jacobs confirmed his wife's treatment and condition.

Mr. Jacobs testified he has to do all of the household work and gardening that Mrs. Jacobs can no longer do.

He also testified their sexual activity has declined since the accident.

Robert L. Lippman, a civil engineer, testified as an expert on behalf of the Claimants. Mr. Lippman testified that a shoulder should be the same height as the roadway. When a shoulder drop-off becomes more than three inches, it should be fixed immediately. A drop-off of an inch to three inches is tolerable but not safe. Mr. Lippman also indicated that there was an accident at the same site on March 16, 1981. He further testified that an accident report is a tool you use to determine if a road needs more inspection and what caused the accident. He felt that an accident report flags one to go out and look at the location. The March 14, 1981, report indicated that the driver in that situation was southbound on Barrington Road when she hit the shoulder, lost control of the car, and rolled the car. On the police report, the shoulder is noted as low and soft. This police report from 1981 should have been fixed immediately, according to Mr. Lippman. Mr. Lippman opined that the drop-off was more than six inches. There were no repairs made.

It was Mr. Lippman's opinion that Claimant, Claire M. Jacobs, went on the shoulder with her two right tires, that she tried to get back on the road too fast. The differential was more than three inches. The scrubbing effect on the edge of the pavement caused her to lose the air in her tires and she lost control. The proper way for her to have gotten back on the highway would have been to slow down to a stop and then turn left. Mr. Lippman further testified that when people learn to drive they are told that if they get on the shoulder, to slow down, stop and get back on the roadway. This procedure is in the driver's manual. However, people who leave the road are surprised and human nature causes them to forget about what they learned and their reflex actions tell them to turn in "and that's

what causes all the accidents he has been listening to. That causes all the accidents that you have been hearing. The person is surprised, they forget what they learned, and they try to turn back on."

It was the opinion of Mr. Lippman that Barrington Road was not properly maintained by the Illinois Department of Transportation whose duty it was to maintain that road.

Mr. Lippman did acknowledge that if the vehicle went off the road where Claimant indicated she went off the road, the vehicle's tires wouldn't have scrubbed at the point where the pictures indicate the shoulder had the drop-off. Mr. Lippman further acknowledged he could see no potholes on the road in the pictures taken in June 1982. Mr. Lippman did indicate that although he saw no pictures, the lack of maintenance of the shoulders in the one location could indicate lack of maintenance further down the road.

The Respondent called Michael Fitzgerald to testify as their sole witness. Mr. Fitzgerald was the claims manager for the Illinois Department of Transportation. He was familiar with Barrington Road at the location of Claimant's accident. The Respondent's records indicated that the road was constructed in 1932 and resurfaced in 1979. The Illinois Department of Transportation has a system in place to take complaints about roadways. All complaints are logged in and placed in the communication center in Schaumburg. He found no complaints on file for the roadway for April 5, 1982.

## Law

The State is not an insurer of the conditions of the highways under its control but does have a duty to the public to use reasonable care in maintaining its roadways.

(*Cataldo v. State* (1983), 36 Ill. Ct. Cl. 23.) To prevail, the Claimant must prove the State was negligent, that the negligence of the State was the proximate cause of the injury, and that the State had actual or constructive notice of the alleged defect in the roadway where the accident occurred. (*Edwards v. State* (1984), 36 Ill. Ct. Cl. 10.) The Court will also consider comparative negligence of the Claimant in adopting an award. *Alvis v. Ribar* (1981), 85 Ill. 2d 1; *Guffey v. State* (1987), 40 Ill. Ct. Cl. 179; *Koepp v. State* (1993), 46 Ill. Ct. Cl. 344.

The Claimant drove off the roadway. There was no evidence presented to substantiate Claimant's belief that she hit a pothole. Claimant had her vehicle towed prior to making a police report. No proper investigation of the accident was made by the police to locate the exact location where Claimant left the roadway and drove on the shoulder. The photographs taken by Claimant's husband in June failed to show a pothole on the roadway. Claimant presented no proof of any pothole repairs at the location. The Court, therefore, finds that Claimant was negligent in failing to keep her vehicle on the highway. To compound Claimant's negligence of driving off the roadway, Claimant failed to slow down, stop and get back on the roadway which was the proper procedure according to her own expert, Mr. Lippman. Claimant forgot what she had learned and tried to turn back onto the roadway. The cause of this accident and injury was Claimant negligently driving off the roadway and then negligently failing to slow down, stop ad then try to drive back onto the roadway. We find that it was Claimant's negligence that caused the injury and was therefore the proximate cause of Claimant's injuries. *Scarzone v. State* (1990), 43 Ill. Ct. Cl. 207.

Claimant had a duty to keep her vehicle under control and to drive at speeds reasonable and proper under the conditions that exist. (*Harris v. State* (1986), 39 Ill. Ct.

Cl. 176.) This Court held that the adoption of the doctrine of comparative negligence in the State of Illinois did not extinguish the requirement of proximate cause. The failure to establish proximate cause of an injury precludes liability, negating the need to compare fault. (*Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208.) It is clear to the Court that the proximate cause of the accident was the negligent driving of Claimant. She could have avoided the accident by driving on the roadway instead of the shoulder and by slowing down and stopping prior to trying to drive back on the roadway when she did drive on the shoulder. *Calvert v. State* (1985), 38 Ill. Ct. Cl. 104.

Because we find that Claimant, Claire M. Jacobs, has failed to prove her claim by a preponderance of the evidence, Claimant, William E. Jacobs', derivative *loss of consortium* claim must also fail.

For the foregoing reasons, it is the order of the Court that Claimants' claims be and hereby are denied.

### ORDER

FREDERICK, J.

This cause comes before the Court on Claimants' petition for rehearing, and the Court having reviewed the Court's opinion, the Court file, the briefs, and heard oral arguments, and the Court being fully advised in the premises,

Wherefore, the Court finds:

1. That Claimant drove off the road.

2. That while Claimant claimed she hit a pothole which caused her to drive off the road, no pothole was proven and in fact, Claimant's photograph showed no pothole.

3. That instead of having the police sent to the scene, Claimant had her car towed from the scene.

4. That Claimant's photographs were taken almost two months after the accident and without any competent proof that they showed the exact location where she left the road, allegedly scrubbed her tires, and where she ended up.

5. That the Court was and is unable to find that the location where she allegedly left the road and allegedly scrubbed her tires is the same exact location as the location of the prior accident claimant relies on for notice.

6. That Claimant violated the driving skills testified to by her own expert witness.

7. That this accident was caused by Claimant negligently driving off the road and negligently trying to reenter the roadway.

8. This Court has rarely found liability on the part of Respondent in shoulder drop-off cases and we decline to do so with the particular facts of this case and our assessment of the credibility of the witnesses. *Doyle v. State* (1993), 45 Ill. Ct. Cl. 194.

9. That the State has a duty to maintain the shoulder of its highways in a manner reasonably safe for its intended purposes but the standard of care is higher for a highway than the shoulder, since the reasonably-intended use of the highway requires a greater level of care than the shoulder. *Tourloukis v. State* (1995), 47 Ill. Ct. Cl. 155.

10. In the case of *Alsup v. State* (1976), 31 Ill. Ct. Cl. 315, this Court denied a claim where the evidence indicated the claimant failed to slow down prior to returning to the roadway. The Claimant in this case failed to slow down prior to trying to return to the roadway.

11. There is evidence in this case that Claimant was attempting to return to the highway just before the accident occurred.

12. In the case of *Hill v. State* (1978), 32 Ill. Ct. Cl. 482, the claim was denied because the Court found that the simple difference in the levels of the roadway and the shoulder of six inches was not negligent maintenance by the State.

For the foregoing reasons, it is the order of the court that Claimants' petition for rehearing is denied.