(No. 94-CC-3268–

KEITH E. WESTBROOK *et al.*, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 1, 1999.*

WOLTER, BEEMAN & LYNCH (BRUCE A. BEEMAN, of counsel), for Claimant.

JIM E. RYAN, Attorney General (DEBORAH L. BARNES, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This case began on May 15, 1992, when a van in which Keith E. Westbrook was a passenger became involved in an automobile accident on the Glenarm Frontage Road, specifically known as County Road O.

Claimant testified that, on May 15th, he was employed as a drywall hanger and finisher by Scott King along with another man named Allen. On May 15th Claimant and Allen were picked up after work by Scott, and all three went to get a cold beer. At the first establishment, each of them had approximately two beers. They than proceeded to the Curve Inn where they purchased pizza and a bucket of beer. Claimant testified that, at the Curve Inn, he and Scott each had approximately two beers. They then took Allen home. After dropping Allen off, they went to the home of a friend of Scott's where Scott went inside for 15 or 20 minutes while Claimant waited in the van. At all times Scott was driving his van. They then proceeded to the Glenarm Frontage Road, a distance of approximately eight to ten miles, which was on the way to Claimant's residence. Claimant testified that, at that time, he did not notice anything unusual about Scott's driving.

When they got to the frontage road it was approximately 8:30 p.m., dark and about four hours after they

had finished work. They had stopped at a stop sign on the road and had started up again when they went off the road. Claimant testified that they fell off the road just like "boom." The van was tilted. Claimant stated that Scott was "trying to fight the van like he just kept holding the wheel and struggling and struggling and then at that point the van grabbed and shot straight across the road at a forty-five-degree angle." At that point, it hit another vehicle driven by a Mr. Southwick. After the impact, Claimant did not feel anything. Claimant subsequently was hospitalized, placed on a respirator and has suffered permanent paralysis of his lower body.

Claimant offered information by stipulation concerning his total amount of medical bills of $77,738.10. Claimant has a wife and three children. His wife helps with his daily care, he has received physical therapy, and he exercises the top half of his body. He needs the assistance of his wife to exercise the lower half of his body, as he cannot move it on his own.

The United States Department of Health and Human Service life table, which Claimant introduced, listed that a white male of 38 years old (Claimant's age) has an average life expectancy of 35.8 additional years.

On cross-examination, Claimant stated that Scott was familiar with the road and that Claimant had ridden with him on the Glenarm Frontage Road quite a lot. After the van dropped off the highway, Scott was trying to fight it back on the road. Claimant stated that he believed that the speed limit was 55 mph and he estimated that they were going approximately 35, 40 or 50 mph when the accident occurred.

Claimant's wife, Janet Westbrook, testified that, after the accident, she went to the scene of the accident and observed a drop-off between the road and the shoulder.

She measured the drop-off and found it to be at least three and one-half to four inches. She measured it in September of 1992. She had observed the drop-off in May of 1992, and from May of 1992 to September of 1992, it appeared to be the same. She measured along a strip of the roadway approximately 200 feet long where the van went off. Mrs. Westbrook also testified concerning the effect of her husband's injuries on the family.

Edmund Gaffney, Maryellen Gaffney and Lisa Britz all testified that they live in the vicinity of the Glenarm Road and that they travel that road on a daily basis. The Gaffneys testified that they had observed a drop-off of approximately three to four inches and that the drop-off had been there from 1984 to 1993. During the period from 1984 to 1993, they did not notice any maintenance being performed on the drop-off. Mrs. Gaffney testified that, in approximately 1984, she had a bicycle accident in which she skinned her knee trying to get back on the main road from the shoulder.

Ms. Britz testified that she traveled the Glenarm Road between 1989 and 1993 approximately three or four times a week. She had observed the drop-off and had not observed any maintenance on the drop-off.

Claimant offered deposition testimony from John Werschey, an employee of the Illinois Department of Transportation (IDOT). Mr. Werschey testified that he is a records specialist for IDOT's District 6. Mr. Werschey testified that there is no set pattern of checking the roads which are maintained by IDOT, but it is the responsibility of all employees to report trouble spots when they become aware of them. Highway maintainers and roadrunners go over the roads in the district plowing snow and picking up dead animals, and they probably will be on every road in the district at least once a month. IDOT's

maintenance records are kept by large subsection designations for cost accounting purposes and do not break out as small a section of an individual road as is in question in this case. If complaints had been received by IDOT concerning the frontage road in question, IDOT would have kept them in their complaint file. Mr. Werschey testified that he had examined their files and had not found any complaints as to that particular road.

Russ Militello, the program engineer for District 6 of IDOT, testified by deposition also. Mr. Militello testified that his responsibility is to coordinate the needs of the highways under IDOT's jurisdiction in the 15 counties which make up District 6. There is an inspection and rating system in place for the pavement surfaces of the roads maintained by IDOT, but not for the shoulders. The pavement rating for the road in question was 5.5 in July of 1991 and 5.3 in July of 1992, both numbers indicating a "fair" rating for the pavement surface. The records also indicated that, between 1988 and 1990, surface improvements had been made to the pavement in question. The frontage road in question is 24 feet wide, has an asphalt surface, two 12-foot lanes, a ten-foot shoulder, and the shoulder is a sod material.

Mr. Militello testified that if road construction activities create a drop-off of three inches or more, the contractor is obligated to barricade the drop-off. The AASHTO handbook, which is the highway safety handbook of the United States Department of Transportation, provides that large drop-offs at a pavement edge of significant lengths may be construed as hazardous. AASHTO guidelines specify that shoulders should be constructed and maintained flush with the pavement surface, but Mr. Militello testified that these guidelines are for interstate highways. IDOT has lesser standards for low volume roads and

it would be cost prohibitive to build hard surface shoulders for every road in Illinois. AASHTO guidelines also provide that regular maintenance is necessary to maintain a flush shoulder, and a drop-off can adversely affect driver control when driving on to the shoulder at any appreciable speed.

William Jacquot testified that he is the safety claims manager with District 6 of IDOT and has been in that position for 14 years. He testified that IDOT keeps, in the normal course of business, complaints of road conditions. If complaints are taken over the telephone they are reduced to writing. He had reviewed the records for this case and did not find any claims or complaints about the roadway or its shoulder in the area of the accident from 1985 to the date of the accident. Mr. Jacquot admitted on cross-examination that someone could drive off the road, have trouble getting back on, and, as long as that person never made a complaint, IDOT would never know about it.

An affidavit of Robert Seyfried of the Traffic Institute of Northwestern University in Evanston, Illinois, was admitted by agreement. Mr. Seyfried stated that he had reviewed various materials from this case and had an opinion to a reasonable degree of scientific engineering certainty as follows:

"a. The edge drop-off of the shoulder in question appears to be less than three and one-half inches. Edge drop-offs of this magnitude are common along many roads and do not present any safety problems for a reasonably alert driver.

b. The edge drop-off of the shoulder in question should not have had any significant effect on the driver's ability to control the car.

c. A reasonably alert driver should have had no trouble getting back on the road and safely returning to his lane of travel without encroaching over the center line."

Respondent also admitted Respondent's exhibit number 1, which is a certified copy of the conviction of driving

under the influence of alcohol of Scott King as a result of the incident in question.

The State is not an insurer of the conditions of the highways under its control but does have a duty to the public to use reasonable care in maintaining its roadways. To prevail in this case the Claimant must prove that the State was negligent, that the State's negligence was the proximate cause of the injury, and that the State had actual or constructive notice of the defect. Even though the doctrine of comparative negligence has been adopted in the State of Illinois, it did not extinguish the requirement of proximate cause. *Jacobs v. State* (1996), 49 Ill. Ct. Cl. 16.

This Court has considered many cases involving accidents with highway shoulder drop-off involvement. In a number of cases the driver of the vehicle in question was found to have caused the accident by driving off of the shoulder and failing to slow down properly to be able to get back on to the pavement safely. *Lee v. State* (1964), 25 Ill. Ct. Cl. 29; *Alsup v. State* (1976), 31 Ill. Ct. Cl. 315; *Dellorto v. State* (1979), 32 Ill. Ct. Cl. 435; *Hill v. State* (1978), 32 Ill. Ct. Cl. 482; *Jacobs v. State* (1996), 49 Ill. Ct. Cl. 16.

In *Alsup* and *Hill*, the Court held that six-inch drop-offs did not constitute negligence *per se*. In *Dellorto*, a car driven by another party went off the road. The other party failed to slow his vehicle to get back on the highway safely and went into the opposite lane, causing the deaths of the Claimant's decedents. The Court found that, while the State may have furnished a dangerous condition, the negligence of the other party in going off the highway and onto the shoulder for no justifiable reason, and the negligent manner in which he tried to get back on the highway, was the sole, proximate cause of the accident.

There is no doubt that Keith Westbrook was tragically and severely injured in the accident that occurred May 15, 1992. However, the proximate cause of the accident was not the negligence of the State. For no apparent reason, Scott King drove his van off of the roadway in a forceful manner. The testimony of the Claimant was that there was a very big sound when Scott went off of the road and that Scott immediately tried to fight the van back on to the road. There was no evidence that Scott ever attempted to slow down to return to the road in a safe manner. Also, Scott admitted that he was intoxicated. The proximate cause of Claimant's injuries was the negligence of Scott King in driving the car off the road and then failing to use due care in getting the car back on.

This claim is hereby denied and dismissed.