(No. 98-CC-2699-

STATE FARM MUTUAL INSURANCE CO. a/s/o GEORGE and CARRIE TUTHILL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 3, 2001.*

GARRETSON AND SANTORA, LTD. (JAMES G. LASCOLA, of counsel), for Claimant.

JIM RYAN, Attorney General (DONALD C. MCLAUGHLIN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This cause is before the Court on Claimant State Farm Insurance Co., as subrogee of George Tuthill and

Carrie Tuthill, against Respondent State of Illinois. The claim, sounding in tort, is based upon alleged negligence of Respondent in relation to the condition of a ramp from Glenwood Dyer Road on to State highway 394 in the city of Beecher. Jurisdiction is pursuant to section 8(d) of the Court of Claims Act. 705 ILCS 505/8(d).

## The Facts

Ms. Carrie Tuthill testified that on December 17, 1996, she was involved in an automobile accident. She was on the ramp from Glenwood Dyer Road attempting to enter the Southbound lanes of Route 394. She was traveling home from her grandmother's house in Dolton between 4:00 to 4:30 p.m. She drove on this road about three times a week for two years prior to the accident. There were two lanes on the ramp and she was in the right-hand lane.

There is a raised concrete median dividing Glenwood Dyer Road and the entrance ramp. On prior occasions, she had noticed the median deteriorating. Ms. Tuthill stated that every time she went by the location during a seven-month period prior to the incident she noticed little chunks of concrete had fallen off the median. There were cracks inside and on the front of the median. She told her mother about the chunks of concrete and her mother gave her a telephone number. Although she could not remember who she called, she thought she reported the condition of the median to a police department, thinking it to be the State Police. She recalls speaking to a woman and was told that they would take care of it. The date of the telephone conversation was December 11, 1996. Her concern at the time was for her tires.

On December 17, Ms. Tuthill said she was about two lengths behind a "big semitruck" following it down the

ramp and "all of a sudden [she] saw this big chunk * * * the only thing [she] did was step on [her] brakes immediately." She was traveling at a speed of 45 to 50 miles per hour when she first saw the chunk. Although she was able to slow down before she hit it, her vehicle ran over the chunk. There was a big "boom" and the concrete lodged under the middle of her car.

After hitting the concrete, Ms. Tuthill put her car in reverse and was able to dislodge the chunk from under her car. She parked her car and examined the big chunk of concrete. "It was like a puzzle, it fit perfect, that chunk fit perfectly in that part of the median" stated Claimant. She could not lift the chunk and left it in the road.

The automobile was owned by Carrie and George Tuthill. The bill to repair the underneath and front bumper assembly of the Prizm totaled $2,073.11. It was necessary for her to rent a car to attend to her family's needs during the time her Prizm was being repaired. A Ford Escort was rented at a total cost of $672. The Tuthills paid $500 of the repairs and $172 of the rental bill. State Farm Insurance Co. paid the rest.

Nicholas Haddad, a Region 1 litigation representative of the Illinois Department of Transportation (hereinafter "IDOT"), testified that his job responsibilities include the investigation of claims. He acknowledged that the subject entrance ramp to Route 394 is under the maintenance jurisdiction of IDOT; however, he noted that Glenwood Dyer Road is not the responsibility of IDOT. In Claimant's case in chief, Mr. Haddad stated that there was not a procedure whereby the State Police forward an incident report to IDOT.

On February 6, 1997, Mr. Haddad sent a memorandum to the lead worker (synonymous for foreman) of the

Bishop Ford Yard responsible for maintenance of the ramp in question, inquiring whether "they had any knowledge of the chunk of concrete in the median prior to the date and time of the incident." The written response by Mr. Tavelette, of the Yard, is included in the department report. The February 20, 1997, response, states that the Yard was "not aware of any chunk of median prior [sic] to the date and time of the accident." The response also indicates that the chunk of concrete was located in the median and an endloader was going to be used to remove it.

## The Law

Both parties declined the opportunity to file briefs in this case. However, the legal principals guiding a decision in cases involving highway maintenance negligence allegations are well settled in this Court.

The State is not an insurer of the conditions of the highways under its control but does have a duty to the public to use reasonable care in maintaining its roadways in order that defective and dangerous conditions, likely to injure persons lawfully on the highways, shall not exist. (*Hanawell v. State* (1995), 47 Ill. Ct. Cl. 270, 274; *Jacobs v. State* (1996), 49 Ill. Ct. Cl. 16, 21.) To prevail, the Claimant must prove by a preponderance of the evidence that the State breached its duty and the breach was the proximate cause of the damage incurred by it. Claimant must establish that the State had actual or constructive knowledge of the alleged defect in the roadway where the accident occurred. (*Jacobs* at 22.) In denying relief to the claimant in *Jacobs*, the Court found the evidence was insufficient to establish that a defect in the roadway was the proximate cause of the accident. *Id.* at 22-3.

In *Hanawell*, the Claimant alleged that she hit a piece of concrete, eight to nine inches in length and about four

inches wide and thick, in the roadway causing her to crash her motorcycle. The Court accepted the premise that the piece of concrete caused Claimant's accident, however, the Court determined that there was no actual or constructive notice to the State (*Id.* at 276). The *Hanawell* court examined other cases involving debris on the highway and noted that when the evidence does not indicate the length of time the debris was upon the roadway, the State could not be charged with constructive notice. See, *Wagner v. State* (1978), 32 Ill. Ct. Cl. 50; *Baker v. State* (1989), 42 Ill. Ct. Cl. 110.

In *Commercial Union Insurance Co. v. State* (1995), 47 Ill. Ct. Cl. 301, the court stated that:

"The test to establish constructive notice is 'where a condition by its evident nature, duration and potential for harm should necessarily have come to the attention of the State, so that the State should have made repairs.' [citing *Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225.]"

The driver of a vehicle in *Commercial Union* struck a concrete slab, approximately 15 inches wide, eight to ten inches long and four to six inches deep, and destroyed the undercarriage of the vehicle. The court denied an award, finding that the condition did not establish constructive notice. Evidence was presented in the case, as was in *Hanawell* and *Scroggins*, that the State regularly patrolled the areas in question.

In the case at bar, Ms. Tuthill testified that for a period of seven months she traveled the same route three times a week and noticed the median deteriorating. She saw cracks and little concrete chunks. She was concerned about potential damage to her vehicle therefore she reported the condition of the median, six days before the accident, to an entity she believed to be the State Police. Although she did not describe the size of the chunk of concrete, she did indicate it was too big for her to move.

The State admits having a maintenance obligation for the ramp. The State does not deny a maintenance duty for the care of the median. There is no evidence that the State had actual notice of the defective or dangerous condition. The State has established that its agents were not aware of a sizable chunk of concrete on the roadway at the time of the accident. The State did not present any evidence of its knowledge, or lack thereof, of a deteriorating median. The State did not deny that the median was deteriorating. The State did not deny that the chunk of concrete struck by Ms. Tuthill was from the median.

The State's agents apparently found the chunk of concrete and indicated it was large enough that it had to be moved with an endloader. There is no evidence of this portion of the highway being inspected by any agents of the State at any time.

Constructive notice is to be determined on a case by case basis. The Court finds that the size of the chunk, the potential harm from a deteriorating concrete median and the fact that Ms. Tuthill watched the median deteriorate for a lengthy period of time are sufficient to establish constructive notice. Respondent has failed to rebut Claimant's *prima facie* evidence that the chunk came from the deteriorating median. The Court finds that the State has breached its duty of care and the breach caused the damage to the vehicle.

Claimant is hereby awarded a total of two thousand seven hundred forty five dollars and eleven cents ($2,745.11).